CLARK WALLING *v.* ESTEN ANGELL & others.

An agreement to pay money, procured by the plaintiff from those preferred in a will by concealing, after the death of the testator and before probate, the place of its deposit, and by threatening to destroy it, is illegal and void; and finds no support in the fact, that the testator himself placed it in the hands of the plaintiff's son, and under the plaintiff's sole control, with full authority to the latter to use it for such extortion.

ASSUMPSIT upon the following agreement, signed by the defendants : —

" $900. Burrillville, Sept. 26, 1855.

" We severally and jointly promise to pay Clark Walling the sum of nine hundred dollars, in two years after date, without interest, providing the last will of our father is brought forward, approved, and allowed.

" As witness our hands, &c."

At the trial of the case, under the general issue, before the chief justice with a jury, it appeared, that the defendants were the sons, and the plaintiff, one of the sons in law, of Randall Angell, late of Burrillville, and that the agreement upon which the suit was brought was obtained under the following circumstances, disclosed by the testimony of the plaintiff; that some time in the year 1850 or 1851, the said Randall came to the plaintiff's house in Burrillville, and after considerable conversation, produced and desired the plaintiff to take charge of, his last will and testament; that the plaintiff declined the charge, although at the request of the said Randall he read the will, and by his leave took some minutes from it; that said Randall then went away, saying as he left, " that he would leave his

will somewhere in North Providence or Smithfield, and would let the plaintiff know where," and also saying, " that he would not leave it among the Angells," assigning as a reason, "that his boys got it once, and cancelled it, and he did not mean that they should get it again ; " that the said Randall took away his will with him, and in two or three days came back with it, and again tried to induce the plaintiff to take the custody of it, which the plaintiff again declined to do ; that the said Randall then placed the will in the hands of one Aaron Walling, son of the plaintiff and his own grandson, directing the said Aaron to take charge of it until he called for it, and if he did not call for it, to deliver it to the plaintiff after his decease, if the plaintiff called for it, and to no one else ; that the said Randall told the plaintiff that he had thought a great deal about this of late, and that he wanted his daughter's children should share about equal with his son's children ; that he did not know why his daughter's children were not as near to him as other men's daughter's children, — and, in conclusion, said to the plaintiff, " that he wanted the plaintiff to have half of the farm in North Providence, and half in Smithfield, and when it was sold, he wanted him to buy the other half; " and that he wanted the plaintiff, " after his decease, to go to Esten (his son) and have no talk with any one else of the family, as he thought Esten would do what was right, and tell Esten his wishes," and that, " if Esten would not do about what he (the plaintiff) thought was right, that he (the plaintiff) might get the will and destroy it, if he was a mind to, and then he would be sure of getting his rights ; " that said Aaron took the will and kept it until after the said Randall's death, when the plaintiff went to Esten Angell, one of the testator's sons, as directed by the testator, and told him the conversation which the testator had had with him, and informed him that the testator had said that he did not want the Ballous to have any of his property, and also told Esten "that he had not got the will, but supposed that he could find it," but did not tell him where the will was ; that he and Esten had some considerable negotiation about what amount should be given to the plaintiff to bring forward the will for probate, Esten in the mean time looking and searching for it

in North Providence and Smithfield, and that afterwards, the agreement upon which the suit was brought was concluded upon between the plaintiff and the defendants in considera- tion that the plaintiff would tell where the will was, or have it brought forward and approved and allowed; that the plain- tiff got the will and produced it to the court of probate, and the same was approved without opposition; that there were other heirs of the testator, besides his sons, who would have receiv¹ a share of his property had there been no will; but by the production of the will they took no share, and the de- fendants received a much greater share than they would have done had the estate been intestate. Upon the back of the agreement, there was the following indorsement: —

"Burrillville, Sept. 29, 1855. Received ten dollars of Esten Angell, it being no part of the within."

The plaintiff further testified that the said Esten Angell made the payment to him thus indorsed.

The above testimony of the plaintiff being in, and the coun- sel for the plaintiff stating in reply to an inquiry of the presid- ing judge that his further testimony would be only in corrobor- ation of this, the judge declined to hear the plaintiff's counsel argue the questions of law raised by the above testimony, and instructed the jury, that according to it, there was no legal con- sideration for the agreement, and it appeared to have been ob- tained by a species of duress; — that the testator had no right to give, or the plaintiff to act upon, the direction given by the testator with regard to the concealment or destruction of his will, as he could not revoke his will in that way; — that the stipulation in the agreement concerning the approval of the will furnished no consideration in support of it, unless it was also proved that there was reasonable ground for opposition to the probate of the will; and that if the jury found the facts testified by the plaintiff, and that the will was kept back by the plaintiff in concert with his son until the agreement sued was made, they should upon that ground return a verdict for the defendants.

Under these instructions, to which the plaintiff excepted, — a verdict having been returned for the defendants, — the plaintiff

now moved for a new trial, upon the grounds, that the instructions were erroneous in matter of law, and that the verdict was against the evidence.

*Browne*, for the plaintiff, claimed that the presiding justice erred in ruling and instructing the jury, that the agreement declared on, and the evidence given by the plaintiff, disclosed no lawful or sufficient consideration to support the agreement or action, because, —

1. The plaintiff, not being custodian of the will, was not by law obliged to communicate his knowledge as to where the will was to the defendants, *gratis.* Dig. 57, p. 359, §§ 2, 4.

2. The testator had a right to give such directions concerning his will as he saw fit; and the plaintiff, not being custodian, had a right to follow those directions, and obtain money in accordance therewith. Dig. 57, p. 257, § 5.

3. The agreement itself shows a good consideration; viz.: the allowing the will to be approved without opposition.

4. The agreement was a reasonable one.

There was no legal duress, not even constructive, disclosed either by the instrument itself, or by the evidence; and therefore the presiding justice erred in saying that the " agreement was void, as being obtained under a species of duress." If the presiding justice charged the jury, that it was necessary (in order to render a verdict for the defendants) for them to find that the will was kept back by the plaintiff in concert with his son until the agreement had been made, and by concert, means collusion, then the plaintiffs say, that a new trial ought to be granted because the verdict is against evidence.

*Blake*, for the defendants. The contract was void because, —

1. It was contrary to, and in fraud of public policy. " All agreements which contravene the public policy are void, whether they be in violation of law or morals, or tend to interfere with those artificial rules which are supposed by the law to be beneficial to the interests of society, or obstruct the prospective objects flowing indirectly from some positive legal injunction or prohibition." Story on Contracts, § 189. The custodian of a will is required, under a penalty, to deliver the same to the court of probate within thirty days after he has

Walling *v.* Angell & others.

knowledge of the testator's death. Revised Statutes, chap. 155, §§ 2, 4, p. 359..

2. There was no consideration for the promise. The custodian was obliged to give up the will without pay. The plaintiff knew who the custodian was, and controlled him; for he claimed that the testator authorized him to withhold the will if the defendants would not do as the plaintiff might think right. To refuse to give it up without pay was an attempt to revoke a will contrary to the provisions of the Revised Statutes, chap. 154, § 5, p. 357.

3. The contract was fraudulent on its face, as well as from the plaintiff's own testimony.

Ames, C. J. The agreement to pay him money, upon which the plaintiff sues, was, according to his own statement, procured by him from the defendants under a threat to destroy their father's will, which had been concealed under an arrangement to which the plaintiff was a party; the sum to be paid being the price stipulated for bringing forward the will for probate. A contract obtained by such means, and based upon such a consideration, cannot support an action. It contravenes the policy of the law, which requires the wills of deceased persons to be promptly produced by those who have the charge of, or control over them, for proof and execution; and was procured from the defendants, not only without any legal consideration, but by a species of duress, which, considering the nature and effect of a last will and testament, and the difficulty of supplying it when lost or destroyed before probate, hardly left them a choice whether they would comply with the terms imposed upon them. "After considerable negotiation," swears the plaintiff, "about what amount should be given to me to bring forward the will for probate, Esten (one of the defendants) in the mean time looking and searching for it in North Providence and Smithfield," this agreement was concluded between the parties. As a last resort then, and after exhausting every other means of obtaining what was their right, and was by the plaintiff in concert with his son illegally kept from them, the defendants yielded to this extortionate demand. It is hardly possible to conceive of a con-

tract to pay money, so entirely without legal merit to support it.

It is no excuse to the plaintiff, legally, however it may be morally, that the testator himself, according to the plaintiff's story, concerted this scheme, and authorized the plaintiff, after the death of the former, to conceal, and even to destroy his will, as the means of procuring this or some other benefit from those who were preferred in it. The testator's power of revoking his will ceased with his life; and all agencies conferred by him upon the plaintiff or others, with regard to such or any other subject, were themselves revoked by his death. The will then became subject exclusively to the requirement of the statute: — that the custodian of it should, within thirty days after he had knowledge of the decease of the testator, deliver the same to the court of probate, or to the person named in such will as executor. Revised Statutes chap. 155, §§ 2, 4.

Neither do we deem it of the least importance to the questions involved in this case, whether the plaintiff or his son, or both, are to be regarded as having the custody of this will, in view of the statute penalties for not bringing it forward for probate within the time limited by the statute. If the son had the manual possession of the will, the father had the sole control over it; for to him only, after the testator's decease, was the son, by the express terms of the deposit, to deliver it. The avowed purpose of this arrangement was, to enable the plaintiff, by concealing and threatening to destroy the will, to extort from the defendants this or some other benefit to himself. The course pursued, both by the father and the son, was in exact accordance with this design, rather than with their legal duty. The will was kept back by both, until this agreement was obtained from the defendants, and then, and not till then, brought forward by the father for probate.

A scheme so illegal in its nature, and dangerous in its tendency, cannot be permitted to succeed. It militates with all the safeguards set by our statutes about both the making and revoking of wills; and exposes this most sacred species of instrument, when left defenceless by the death of the testator,

to be used by the custodian or those who control him, for their own profit, in any way that they might through fraud pretend, and by perjury insist, that the testator had authorized.

This motion must be overruled, with costs, and judgment be entered upon the verdict.